**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM M.S. Jr.,<br>Plaintiff<br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of the Social<br>Security Administration,<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br><br>NO. 26-1482 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE September 18, 2026

William M.S., Jr. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is denied.

## I. PROCEDURAL HISTORY[1]

Plaintiff filed his DIB claim on October,16 2023, alleging that his disability began on April 13, 2021 R. 17. Plaintiff's claim was denied initially and upon reconsideration; hence, he requested a hearing before an administrative law judge. *Id.* A telephonic hearing was held before administrative law judge Carl Bennet Watson ("the ALJ"), on April 2, 2025. *Id.* Plaintiff, represented by an attorney, and vocational expert Stephen Cosgrove ("the VE") testified at the

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Document No. 8), Defendant's Response to Request for Review of Plaintiff ("Resp.") (Document No. 9), Plaintiff's Reply Brief ("Reply") (Document No. 10), and the administrative record. ("R.") (Document No. 5).

hearing. R. 61-85. The ALJ, applying the sequential evaluation process ("SEP") for disability,[2] denied relief, on May 9, 2025. R. 17-27. On January 12, 2026, the Social Security Administration's Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. R. 1-3. Next, Plaintiff sought judicial review in this court. The parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff was 49 years old at the administrative hearing. R. 61. He completed the 11th grade of schooling, did not obtain a GED, and was working part-time at the time of the administrative hearing. R. 60, 62, 65.

### B. Plaintiff's Testimony

At the April 2, 2025 administrative hearing, Plaintiff testified about his impairments. R. 61-76. His health problems consist of constantly being out of breath because of his heart and lung

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

problems, poor concentration, anxiety, depression, and knee pain. R. 65-66, 72-73. Plaintiff described needing three rest stops while walking six blocks to his part-time job because he was constantly out of breath; secondary to this condition, Plaintiff has never been able to maintain full-time employment. R. 65. Sitting up or down quickly causes dizziness. R. 69.

Because his concentration is so poor, Plaintiff relies upon his wife to schedule his doctors' appointments and insure that he takes his prescribed medication. R. 72. He referred to his concentration problem as "brain fog" and stated that it causes him to miss two to three days of work each month. Plaintiff sleeps poorly at night and takes several naps during the day to alleviate his fatigue. R. 70. He constantly wears a knee brace, because of his pain. R. 67.

Anxiety and depression cause Plaintiff to avoid crowds, which he defines as four people. R. 74. He believes his depression commenced after his heart attack and stent placement. R. 72. Plaintiff lives in constant fear of falling and causing himself injury or suffering another heart attack. R. 73. His depressive symptoms worsen after dark, so he craves sunshine. R. 73.

C. Vocational Testimony

The VE characterized Plaintiff's past relevant work as a janitor as a semi-skilled[3] job, performed at the medium[4] level of exertion. R. 77. The ALJ asked the VE to consider a person who has Plaintiff's age, education and past relevant work, who was able to perform light[5] work; with additional limitations: unable to climb ladders, ropes or scaffolds; unable to be around unprotected heights; unable to tolerate concentrated exposure to smoke, fumes, odors, dust, gases

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

and poor ventilation. R. 78. The VE opined that this individual could not perform Plaintiff's past work but could perform three unskilled[6] jobs: (1) routing clerk, 120,000 positions in the national economy; (2) small product assembler I, 19,500 positions in the national economy; and (3) office helper, 5,000 positions in the national economy. R. 78. Next, if the same individual was limited to sedentary[7] work, he could perform three unskilled jobs: (1) call out operator, 4,600 positions in the national economy; (2) telephone information clerk, 6,000 positions in the national economy; and (3) telephone order clerk 20,600 positions in the national economy. R. 78-79, 83. The VE opined that employers tolerate an employee being off task no more than 20% of the workday or missing three days of work per month. R. 83.

The VE explained that the sources for his testimony concerning available jobs were the Dictionary of Occupational Titles ("DOT"), Social Security Regulation ("SSR") 24-3p, the United States Bureau of Labor Statistics, and the SkillTRAN Job Browser Pro program. R. 84. To obtain his estimate of the number of jobs available, he employed the Job Browser Pro listed number of jobs for a particular DOT occupation code "as modified by the SOC classification from the OES survey." R. 84. Plaintiff's attorney declined the ALJ's invitation to question the VE, expressing his opinion that the ALJ's questions were very thorough. R. 84.

## III. THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2029.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

since March 21, 2021, the alleged onset date (20 CFR 404.1571 *et seq*,).

3. [Plaintiff] has the following severe impairments: coronary artery disease and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c))

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined at 20 CFR 404.1567(b) except he cannot climb ladders, ropes or scaffolds; he must avoid working at unprotected heights; and he must avoid concentrated exposure to smoke, fumes, odors, dust, gases, and poor ventilation.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on November 28, 1975, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational guidelines as a framework supports a finding that [Plaintiff] is "not disabled" whether or not [Plaintiff] has transferrable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2 ).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569 and 404.1569a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 1, 2021, through the date of this decision (20 CFR 404.1520(g)).

R. 19-22, 25-26.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or

more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. Review of the Administrative Law Judge's Decision

Applying the SEP, the ALJ determined that Plaintiff could not perform his past relevant work, but could perform light, unskilled work, hence, he was not disabled. R. 17-27. Plaintiff disputes the ALJ's decision and argues that the ALJ erred by: (1) omitting from the residual functional capacity ("RFC") assessment four opinions of state agency review psychologist Monica Wood Yeater, Psy.D.; (2) improperly rejecting his subjective complaints; and (3) failing to comply with the requirements of Social Security Ruling ("SSR") 24-3p. Pl. Br. at 4-12, 14-18. Plaintiff also argues that the Appeals Council erred by failing to consider new, material evidence he submitted to it. Pl. Br. at 12-14. The Commissioner denies Plaintiff's claims of error. Resp. at 1-16. This court finds that Plaintiff's arguments lack merit.

1. <u>The ALJ's Failure to Consider Dr. Yeater's Mild Limitations in Mental Functioning was Harmless, if it was Error at All</u>

Plaintiff argues that the ALJ committed reversible legal error because he ignored Dr. Yeater's opinions that he had mild limitation in four areas of mental functioning and failed to include those mild limitations in the RFC assessment. Pl. Br. at 4-8. Plaintiff is correct that the ALJ never mentioned Dr. Yeater's opinions in his decision. However, this alleged error, if it is error at all, is harmless.

On May 1, 2024, Dr. Yeater evaluated the case file to opine on whether Plaintiff met the requirements of Listed Impairments 12.04 and 12.15. R. 125-26. Dr. Yeater determined that Plaintiff did not meet either listing, because he had only mild limitation in the four areas of mental functioning that must be evaluated: understanding, remembering and applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing himself. R. 125. The relevant regulation indicates that this level of impairment corresponds to a non-severe mental impairment. 20 C.F.R. § 404.1520a(d)(1)

The ALJ failed to mention Dr. Yeater's opinions. Instead, the ALJ found that Plaintiff had no limitations in these four areas of mental functioning, which, per the Commissioner's regulations, meant that Plaintiff's mental impairments were not severe. R. 21 (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ's findings of no limitation in the four areas of functioning were based upon medical evidence that Plaintiff's bipolar disorder responded well to treatment and his treatment notes documented few, if any, abnormalities, or any need for emergency or inpatient mental health treatment after the alleged onset date. R. 21. Accordingly, the ALJ found, consistent with Dr. Yeater, that Plaintiff's mental health impairments were not severe.

Plaintiff fails to explain how the ALJ's non-disability decision could have changed if the ALJ had explicitly considered Dr. Yeater's opinions. This court finds no likelihood of a different

result, inasmuch as the ALJ and Dr. Yeater considered record evidence regarding the same four areas of mental functioning, and both concluded that Plaintiff's mental impairments were not severe.

Furthermore, there is no binding authority in this circuit for the proposition that an ALJ must explicitly include mild limitations in these four areas of mental functioning into an RFC assessment. Indeed, Third Circuit precedent suggests the opposite. *See Hess*, 931 F.3d at 210 (holding that even "moderate" limitation in one area of mental functioning, which is higher than "mild" limitation, need not be explicitly included in the RFC assessment). Hence, it is doubtful that the ALJ erred by omitting Dr. Yeater's opinions from the RFC assessment, so long as he had a valid explanation for the RFC assessment reached. *Id*. at 211-12. Herein, the ALJ did provide a valid explanation for his RFC assessment, inasmuch as he relied, in part, on Plaintiff's ability to work part-time, R. 23. *See Hess*, 931 F.3d at 214 (holding that the ALJ provided a valid explanation for his RFC assessment based upon, *inter alia*, the plaintiff's ability to work part-time and treatment notes which mostly showed no serious problems in functioning). Hence, this court will not reverse, based upon Plaintiff's first argument.

2. <u>The ALJ Properly Evaluated Plaintiff's Subjective Complaints</u>

Plaintiff maintains that the ALJ failed to evaluate properly his subjective complaints, because he misunderstood Plaintiff's part-time work and relied upon his normal lung function testing without adequately considering his heart disease. Pl. Br. at 8-12. This court finds that the ALJ identified substantial evidence to support his evaluation of Plaintiff's subjective complaints.

The ALJ commenced his analysis by summarizing Plaintiff's testimony. R. 22-23. Plaintiff does not claim that the summary is inaccurate. The ALJ then concluded that Plaintiff's subjective testimony was not consistent with the medical evidence or other evidence in the record.

R. 23. Medical evidence and evidence from other sources are precisely what the regulations require the ALJ to consider when evaluating symptom testimony. 20 C.F.R. § 404.1529(c)(1)-(3) (2017). Furthermore, Plaintiff's daily activities, which would include his part-time work, are defined as a type of evidence relevant to the evaluation of his symptom testimony. 20 C.F.R. § 404.1529(c)(3)(i). Since the ALJ considered the types of evidence mandated by the regulations, there is no basis to find he committed legal error by doing so.[8]

Finally, Plaintiff's complaint that the ALJ relied upon his mostly normal lung function testing to improperly discount the effect his heart disorder had on his breathing, *see* Pl. Br. at 10, is beside the point. The question before the court is not whether substantial evidence could support a conclusion different from the one the ALJ reached, but whether the ALJ identified substantial evidence, which is only more than a scintilla, to support his conclusion. *Biestek*, 587 U.S. at 103. Herein, Plaintiff's mostly normal lung functioning tests provide substantial evidence to support the ALJ's conclusion that Plaintiff's shortness of breath was not as serious as he testified. Therefore, the ALJ's reliance on Plaintiff's lung function test results was proper and provides substantial evidence to support his decision.

3. <u>The ALJ Properly Applied SSR 24-3p</u>

Next, Plaintiff argues that the ALJ misapplied SSR 24-3p, because he did not obtain a more detailed explanation from the VE concerning how the VE arrived at his testimony as to the number of jobs Plaintiff could perform. Pl. Br. at 14-18. This claim is belied by the record.

At the hearing, the ALJ asked the VE to identify the data sources and method he used to arrive at his testimony concerning the estimated number of jobs Plaintiff could perform. R. 83.

---

[8] Plaintiff's complaint that the ALJ misunderstood the nature of his part-time work, Pl. Br. at 9-10, is incorrect. The ALJ clearly understood that Plaintiff was working part-time at a medium exertion job. R. 23. Furthermore, the ALJ explained that he reduced Plaintiff's RFC to light work so that Plaintiff could perform full-time work at the lesser exertional level. R. 23.

This inquiry is required by the ruling. SSR 24-3p, 2024 WL 5256890, *5. The VE identified his data sources as the DOT, SSR 24-3p, the United States Bureau of Labor Statistics, and the SkillTRAN Job Browser Pro Program. R. 84. The VE then explained that he estimated job numbers by using the Job Browser Pro listed number of jobs for a particular DOT occupation code "as modified by the SOC classification from the OES survey." R. 84. While this explanation contains two acronyms the VE did not define, SOC and OES, Plaintiff knows what they mean. *See* Pl. Br. at 15-16 (explaining that SSR 24-3p identifies SOC as "Standard Occupational Classification," a system many federal agencies now use and OES as "Occupational Employment Statistics"). It is also clear that the ALJ understood what the acronyms meant; Plaintiff's attorney did as well and deliberately declined the opportunity to question the VE further about this point. R. 84. Thus, the VE adequately explained how he arrived at his testimony concerning the number of jobs Plaintiff could perform, in compliance with SSR 24-3p.

4. <u>Plaintiff is not Entitled to a Sentence Six Remand</u>

Finally, Plaintiff maintains that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g), based upon April 9, 2025 cardiology reports (R. 42-44). Pl. Br. at 12-14. This court finds that Plaintiff has not demonstrated good cause for his failure to present the evidence to the ALJ, hence, he is not entitled to a sentence six remand.

In order to obtain a sentence six remand, Plaintiff must provide good cause for his failure to have presented the evidence to the ALJ.[9] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). Herein, although Plaintiff acknowledges that he must demonstrate good cause, Pl. Br. at 13, he omits any justification for his failure to present the evidence to the ALJ. Moreover, in his reply,

[9] Sentence six also requires that the evidence be new and material. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). It is unnecessary to address these requirements since Plaintiff fails to demonstrate good cause.

Plaintiff also declines to offer any justification for failing to submit the records to the ALJ. Plaintiff's failure to identify good cause dooms his request for a sentence six remand. *Matthews*, 239 F.3d at 595.

Implementing and Judgment Orders follow.